**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3379
_____

EARL WOODROW GALLIMORE,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A72-749-146
Immigration Judge:  Margaret R. Reichenberg
_____

Argued June 10, 2010

Before:  AMBRO, CHAGARES, and GREENAWAY, JR.,
<u>Circuit</u> <u>Judges</u>.

(Filed: August 20, 2010)

_____


Nita Dobroshi, Esq. (Argued)
Spar & Bernstein
225 Broadway, Ste. 512
New York, NY 10007
          <u>Attorney for Petitioner</u>

Aliza B. Alyeshmerni, Esq.
Sharon M. Clay, Esq. (Argued)
Allen W. Hausman, Esq.
Thomas W. Hussey, Esq.
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
    Attorneys for Respondent

——————————

OPINION

——————————

CHAGARES, Circuit Judge.

Earl Woodrow Gallimore petitions this Court to review a final order of removal issued by the Board of Immigration Appeals ("BIA"). After finding Gallimore removable, an Immigration Judge ("IJ") concluded that he is ineligible by law to receive a discretionary waiver of removal. Gallimore appealed to the BIA, challenging only the IJ's waiver determination. The BIA affirmed on alternative grounds that it raised sua sponte, and this petition followed. We will grant the petition and remand to the BIA for further proceedings.

I.

Gallimore is a 48-year-old native and citizen of Jamaica. He entered the United States on August 7, 1993 pursuant to a valid non-immigrant visa. On September 25, 1993, while driving on a New Jersey roadway with a female companion, police officers stopped Gallimore and recovered five pounds of marijuana from the vehicle. Gallimore was detained and questioned, and although he claims that he did not know he had been formally arrested, he appears to have spent three or four days in custody. Joint Appendix ("JA") 406. On December 3, 1993, a grand jury returned a sealed indictment against Gallimore, charging him with, inter alia, possession with intent to distribute five pounds or more of

marijuana, in violation of N.J. Stat. Ann. §§ 2C:35-5a(1) and 2C:35-5b(10)(b). JA 408. Gallimore claims that he was not aware of the indictment at the time it was returned.

On January 12, 1994, Gallimore married a United States citizen. On April 14, 1994, he and his wife filed a joint petition and application for an adjustment of status, seeking that he be reclassified as a lawful permanent resident ("LPR"). On the Form I-485 that Gallimore completed, he answered "no" to the following question: "Have you ever, in or outside the U.S. . . .[,] been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance . . . ?" JA 403. He answered similarly during an interview in support of the application. On July 6, 1994, the Immigration and Naturalization Service ("INS") approved the application and adjusted Gallimore's status to LPR on a conditional basis. See 8 U.S.C. § 1186a.[1]

On November 13, 1994, Gallimore was arrested on the still-pending indictment. He claims that this was the first time he learned of the drug charges against him. Though he originally pleaded not guilty, Gallimore ultimately reversed course and entered a guilty plea on March 10, 1995. JA 406-07. He was sentenced to time served – six days, which included the three or four days he appears to have served after being detained in September 1993. JA 406.

On April 1, 1996, Gallimore and his wife filed a petition to have the conditions on his LPR status removed. JA 399-400. On the Form I-751 filed in support of the petition, he answered "no" to the following question: "Since becoming a conditional resident, have you ever been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance[?]" JA 400. Gallimore claims that his wife completed the form without knowing about his conviction. He admits, however, that he signed the form. The INS approved the petition

---

[1] For ease of reference, we refer hereafter to aliens whose status is adjusted pursuant to § 1186a as "conditional LPRs" or "conditional permanent residents."

on August 22, 1996. JA 399.

Five years later, on December 17, 2001, Gallimore applied for naturalization. JA 395-98. For the first time, he disclosed on the citizenship application his 1993 arrest, his 1995 conviction, and his sentence. JA 397. On July 11, 2005, because of the conviction and his previous failure to disclose it, Gallimore's application for citizenship was denied for poor moral character.

On April 3, 2006, United States Citizenship and Immigration Services ("CIS") issued Gallimore a Notice to Appear ("NTA") (and later supplemented it), charging him as removable pursuant to three statutory provisions of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1101, et seq. First, the NTA charged Gallimore as removable under 8 U.S.C. § 1227(a)(1)(A) for being, at the time of re-entry or adjustment of status, within a class of inadmissible aliens. Specifically, the NTA alleged that Gallimore was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for having engaged in fraud or willful misrepresentation of a material fact to obtain admission, documentation, or other benefit under the INA. Second, the NTA charged Gallimore as removable under § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony. Third, the NTA charged Gallimore as removable under § 1227(a)(2)(B)(i) for having been convicted of a qualifying controlled substance violation. JA 457.[2]

Regarding the first charge of removability, the amended NTA alleged:

> You procured your admission, visa, adjustment, or other documentation or benefit by fraud or by willfully misrepresenting a material fact, to wit: You failed to admit, on your I-485 application that was submitted on 4/14/94 and while being questioned

_____

[2] Gallimore does not dispute that his conviction constitutes both an aggravated felony and a qualifying controlled substance violation.

4

under oath by a Service Officer on 6/30/94, and on your I-751 form that was executed by you on April 1, 1996 . . . , to your prior drug trafficking activities that occurred on December 3, 1993[3] as is evidenced by an indictment against you and your admission of guilt before the New Jersey Superior Court to a charge in that indictment. Those misrepresentations were made by you in order to have the Service grant you permanent resident status.

JA 414. Gallimore denied removability and the factual allegations supporting the charges. He also applied for cancellation of removal, waiver of removal, and termination or closure of the proceedings. The IJ held five days of removal proceedings, during which Gallimore testified. Among other things, he claimed that he had been detained for only one and one-half or two hours on September 25, 1993, and that he did not understand at the time that he had been arrested. JA 150-51.

In an oral opinion, the IJ found that the Government had proved by clear and convincing evidence that Gallimore was removable on all three charged grounds. JA 83-84. With respect to the charge of removability based on Gallimore's misrepresentations, the IJ found that he had willfully failed to disclose his 1993 arrest on both the Form I-485 and the Form I-751, and during his June 30, 1994 interview. JA 84. She found further that Gallimore had willfully failed to mention the conviction on the Form I-751 submitted to remove the conditions on his LPR status. Id. The IJ rejected Gallimore's intimation "that anyone other than [himself] bore responsibility for these omissions." JA 85. The IJ concluded that Gallimore had made the misrepresentations "so he could maintain his eligibility for these application[s] because clearly if he had revealed th[e] conviction he would not have been eligible for the benefits he was seeking." Id. She "was not persuaded by [Gallimore's] self-serving

---

[3] This date is obviously incorrect. December 3, 1993 is the date the indictment was returned. The correct date of Gallimore's drug activities is September 25, 1993. JA 408.

5

testimony that he was the innocent dupe in all of these filings with false information[.]" JA 88.

Turning to Gallimore's requested bases for relief from removal, the IJ denied termination and administrative closure of the removal proceedings. JA 86-87. She also pretermitted his application for cancellation of removal, as 8 U.S.C. § 1229b(b)(1)(C) clearly rendered him ineligible for such relief. JA 87-88. Finally – and central to this petition – the IJ held that Gallimore was not eligible for a waiver under former INA § 212(c) "because he did not obtain his permanent residence without willfully misrepresenting [a] material fact." JA 87. Citing Matter of T---, 6 I. & N. Dec. 136 (BIA 1954), the IJ concluded that Gallimore had never been "'lawfully' admitted as a lawful permanent resident" – a necessary prerequisite for § 212(c) relief – because he had obtained his original status adjustment through willful misrepresentation. JA 87. The IJ therefore denied the waiver application and issued an order of removal. JA 78-79.

Gallimore timely appealed to the BIA, challenging only the IJ's waiver analysis. The BIA affirmed the IJ's order on alternative grounds and dismissed the appeal. JA 2-3. The BIA agreed with the IJ's ultimate conclusion that Gallimore had not been "lawfully admitted for permanent residence" under § 212(c), and that he was therefore ineligible for a waiver. But it did so on the basis that his 1995 conviction alone precluded such relief. Without referencing Gallimore's initial 1994 status adjustment, the BIA explained:

> [T]he respondent's 1995 drug conviction clearly rendered him inadmissible to the United States under [8 U.S.C. § 1182(a)(2)(A)(i)(II)] as it then existed. This inadmissibility rendered the respondent statutorily ineligible for adjustment of status because it precluded him from demonstrating that he was "admissible to the United States for permanent residence," as required by [8 U.S.C. § 1255(a)(2)] . . . . Thus, although the respondent's status was adjusted to that of a lawful permanent resident in 1996 in compliance with procedural formalities, he was never "lawfully" admitted for permanent

6

residence within the meaning of former [§] 212(c) of the Act because at the time of adjustment he could not satisfy the substantive legal requirements associated with that status.

JA 2-3. In support of its explanation, the BIA cited decisions from the Courts of Appeals for the Second, Fifth, Eighth, Ninth, and Eleventh Circuits, as well as two of its own decisions. JA 3. Given its holding, the BIA specifically declined to review the IJ's analysis regarding Gallimore's alleged misrepresentations, again omitting mention of his 1994 status adjustment:

> Because the respondent's 1995 drug conviction was sufficient, without more, to preclude his 1996 adjustment of status from being considered "lawful" within the meaning of former [§] 212(c), we need not decide at this time whether, at the time of his adjustment, the respondent was also inadmissible for willfully misrepresenting a material fact.

JA 3. Gallimore then filed this petition for review.[4]

---

[4] We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252. The issues of statutory interpretation presented to us are pure questions of law, and we review them de novo, subject to applicable principles of agency deference. See Valansi v. Ashcroft, 278 F.3d 203, 207-09 (3d Cir. 2002) (discussing principles of deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984)). Though the BIA agreed with the IJ's ultimate legal conclusion, it did so for expressly different reasons. Accordingly, because it did not adopt or defer to the IJ's findings or analysis, we review only the BIA's decision. Kang v. Att'y Gen., __ F.3d __, __, No. 08-4790, 2010 U.S. App. LEXIS 13958, at *11 (3d Cir. July 8, 2010); Voci v. Gonzales, 409 F.3d 607, 612 (3d Cir. 2005); Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001).

7

II.

Gallimore argues that the BIA erred when it held that his conviction alone rendered him ineligible for discretionary relief under INA § 212(c). Because the BIA's analysis in all likelihood rests on an historically inaccurate premise, it cannot stand. Alternatively, to the extent that one can glean from the BIA's opinion an interpretation theoretically supporting its disposition, we hold that the BIA's opinion fails adequately to explain its reasoning and, in any event, appears incorrect as a matter of law. Whatever the case, the BIA's opinion is insufficient to support its dismissal of Gallimore's appeal. We will therefore grant the petition and remand the matter to the BIA for further proceedings.

A.

An alien may obtain LPR status under the INA by virtue of his marriage to a citizen of the United States. Pursuant to 8 U.S.C. § 1186a, that status is "conditional" for the first two years of the marriage. See Vasquez v. Holder, 602 F.3d 1003, 1006 (9th Cir. 2010); Cabrera-Perez v. Gonzales, 456 F.3d 109, 111 (3d Cir. 2006) (per curiam). Subparagraph (a)(1) provides that "an alien spouse . . . shall be considered, at the time of obtaining the status of an alien lawfully admitted for permanent residence, to have obtained such status on a conditional basis subject to the provisions of this section." 8 U.S.C. § 1186a(a)(1). The purpose of this scheme is obvious: to ferret out sham marriages entered into for the purpose of obtaining entry into the United States. See Cabrera-Perez, 456 F.3d at 111; see also Carpio v. Holder, 592 F.3d 1091, 1094 (10th Cir. 2010) ("Congress passed the Immigration Marriage Fraud Amendments (IMFA) [containing § 1186a] . . . , which sought to deter fraud by aliens seeking to acquire lawful permanent residence in the United States based on marriage to United States citizens or lawful permanent resident aliens."); Choin v. Mukasey, 537 F.3d 1116, 1120 (9th Cir. 2008) ("The purpose of the IMFA was 'to deter immigration-related marriage fraud and other immigration fraud.'" (citation omitted)).

Under § 1186a, if at any time before the second anniversary of the alien having obtained conditional LPR status, the Attorney

General learns that the marriage was fraudulent or has been annulled or terminated, the Attorney General "shall terminate the permanent resident status of the alien . . . as of the date of the determination."  8 U.S.C. § 1186a(b)(1).  Termination of conditional permanent resident status renders the alien removable. 8 U.S.C. § 1227(a)(1)(D)(i).

In order to have the conditions removed, the alien and citizen-spouse must file a joint petition stating "that the marriage, in sum and substance, was not entered into for the purpose of gaining [the] alien's entry as an immigrant."  Cabrera-Perez, 456 F.3d at 111; see also 8 U.S.C. § 1186a(c)(1)(A), (d)(1).  This petition must be filed during the ninety-day period before the second anniversary of the alien's admission as a conditional LPR. 8 U.S.C. § 1186a(d)(2)(A).  The statute requires the alien and the citizen-spouse to appear for an interview with CIS, but the Attorney General may waive that requirement.  See 8 U.S.C. § 1186a(c)(1)(B), (d)(3); 8 C.F.R. § 216.4(b).  Upon verification that the facts in the petition are true, "the Attorney General shall . . . remove the conditional basis of the [alien's status] effective as of the second anniversary of the alien's obtaining the status of lawful admission for permanent residence."  8 U.S.C. § 1186a(c)(3)(B); see also Vasquez, 602 F.3d at 1006; Choin, 537 F.3d at 1118-19.[5]

If a conditional LPR fails to file a timely petition for removal of the conditions, or fails to appear for an un-waived interview, the Attorney General ordinarily must terminate the alien's conditional LPR status as of the second anniversary that status was obtained. 8 U.S.C. § 1186a(c)(2); see also Vasquez, 602 F.3d at 1006.  Section 1186a contains no provision, however, requiring the Attorney General to terminate an alien's conditional status upon the commission of a criminal offense.  Additionally, the "conditions" imposed by § 1186a – aside from the marriage-related formalities to which we have referred – neither restrict the rights nor expand the obligations of a conditional LPR.  The Attorney General, in fact, has promulgated regulations stating that,

---

[5] The Attorney General has never challenged Gallimore's marriage as fraudulent.

9

except where otherwise specified, conditional LPRs enjoy the same rights and privileges as those LPRs whose status is not conditional. See generally 8 C.F.R. §§ 216.1-216.6.

## B.

Before its repeal by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546, INA § 212(c) permitted certain immigrants found deportable on the basis of a criminal offense to apply for discretionary relief – known as "waiver" – from deportation. See Ponnapula v. Ashcroft, 373 F.3d 480, 486 (3d Cir. 2004). Section 212(c) stated in pertinent part: "Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General . . . ." 8 U.S.C. § 1182(c) (1994). Though this provision literally applied only to exclusion proceedings when LPRs returned from abroad, judicial and administrative interpretations extended its protection to deportation proceedings as well. See INS v. St. Cyr, 533 U.S. 289, 295 (2001); Atkinson v. Att'y Gen., 479 F.3d 222, 225-26 (3d Cir. 2007); Matter of Silva, 16 I. & N. Dec. 26, 30 (BIA 1976).

Despite IIRIRA's repeal of § 212(c), the Supreme Court held in St. Cyr that discretionary relief under § 212(c) "remains available for aliens . . . whose convictions were obtained through plea agreements and who . . . would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." 533 U.S. at 326. It is undisputed that Gallimore satisfies the first portion of this standard, as he pleaded guilty before IIRIRA became effective. But to be eligible for a waiver, Gallimore must also have been "lawfully admitted for permanent residence." This is the overarching issue before us.

## C.

An alien who becomes an LPR through fraud has not been "lawfully admitted" for § 212(c) purposes. Matter of T---, 6 I. &

10

N. Dec. at 137-38. This is so because "[t]he term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity . . . ." In re Longstaff, 716 F.2d 1439, 1441 (5th Cir. 1983); see also Mejia-Orellana v. Gonzales, 502 F.3d 13, 16 (1st Cir. 2007) ("BIA precedent holds that aliens are ineligible for [waiver] . . . where they have acquired permanent resident status by fraud or misrepresentation, because they have not been lawfully admitted for permanent residence." (citing In re Koloamatangi, 23 I. & N. Dec. 548, 551 (BIA 2003))); Biggs v. INS, 55 F.3d 1398, 1401 (9th Cir. 1995).

Thus, an alien whose status has been adjusted to LPR – but who is subsequently determined to have obtained that status adjustment through fraud – has not been "lawfully admitted for permanent residence" because the "alien is deemed, ab initio, never to have obtained [LPR] status." Koloamatangi, 23 I. & N. Dec. at 551. Such an alien, therefore, is ineligible for § 212(c) relief. As set out above, the IJ in this case found that Gallimore had obtained his LPR status by willfully misrepresenting or omitting his arrest and conviction on multiple occasions, and therefore concluded that he was ineligible for § 212(c) relief because his 1994 status adjustment had not been "lawful."

The reasoning of Matter of T--- and Koloamatangi has been extended to situations outside of fraud and misrepresentation. Cf. Koloamatangi, 23 I. & N. Dec. at 550 ("[T]he term 'lawfully admitted for permanent residence' d[oes] not apply to aliens who had obtained their permanent resident status by fraud, or had otherwise not been entitled to it." (emphasis added)). Where an alien obtains LPR status through administrative oversight – despite being ineligible for that status for one reason or another – several of our sister courts of appeals have deferred to BIA decisions concluding that the alien has not been "lawfully admitted for permanent residence."[6] As we have explained, the BIA affirmed

_____

[6] See Shin v. Holder, 607 F.3d 1213, 1217 (9th Cir. 2010) ("Although the facts of . . . Koloamatangi involve[d] acts of personal fraud or misrepresentation, [its] holding[] broadly deem[s] all grants of LPR status that were not in substantive compliance

11

the IJ's decision on this alternative basis. Specifically, it held that even though Gallimore's application for status adjustment had been approved in 1996, his 1995 conviction rendered him legally ineligible for it because the conviction rendered him inadmissible at that time. Thus, reasoned the BIA, irrespective of any material misrepresentations he may or may not have made, Gallimore's 1996 status adjustment had not been "lawful," thereby destroying his eligibility for § 212(c) relief.

Gallimore does not challenge – and we are in complete

---

with the immigration laws to be void ab initio."); Walker v. Holder, 589 F.3d 12, 20-21 (1st Cir. 2009) (holding that where alien's status was procured through fraud of third parties and without petitioner's knowledge or participation, "it is not determinative that Petitioner himself intended to commit fraud in obtaining admission to the United States for permanent residence" because he had not been "lawfully admitted" in any event); De La Rosa v. DHS, 489 F.3d 551, 554-55 (2d Cir. 2007) (per curiam) (deferring to BIA's conclusion that petitioner had not been "lawfully admitted" where she had not been present in the United States in 1982, yet had been admitted pursuant to an amnesty program requiring such presence); Savoury v. Att'y Gen., 449 F.3d 1307, 1313 (11th Cir. 2006) ("The adverb 'lawfully' requires more than the absence of fraud. It requires consistency with all applicable law."); Arellano-Garcia v. Gonzales, 429 F.3d 1183, 1187 (8th Cir. 2005) ("We conclude that the agency's interpretation of 'lawful' . . . is reasonable and applies not only where there has been fraud in the procurement of the adjusted status, but also to a situation where the alien was not entitled to an adjustment but received it by a negligent mistake of the agency."); Monet v. INS, 791 F.2d 752, 753-54 (9th Cir. 1986) (concluding that petitioner's prior conviction would have rendered him ineligible for adjustment to LPR at the time his status was adjusted, and thus that he had not been "lawfully admitted" to the United States); In re Longstaff, 716 F.2d at 1441 ("[A] narrow reading of the term 'lawfully admitted' distorts its meaning. Admission is not lawful if it is regular only in form. The term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity . . . .").

12

agreement with – the fundamental reasoning of the fraud line of cases (Koloamatangi and Matter of T---) and the application of that reasoning to what we shall refer to as "non-fraud cases." The agency's determination that one does not "lawfully" obtain LPR status through fraud is certainly a reasonable interpretation of § 212(c) and that statutory analysis is entitled to deference. Further, we discern no principled distinction between (1) finding a status adjustment not "lawful" because the applicant procured it through fraud; and (2) finding a status adjustment not "lawful" because the applicant was not legally entitled to it for any other reason.

Accordingly, we defer to the BIA's interpretation of § 212(c) that "an alien whose status has been adjusted to lawful permanent resident but who is subsequently determined in an immigration proceeding to have originally been ineligible for that status has not been 'lawfully admitted for permanent residence.'" De La Rosa v. DHS, 489 F.3d 551, 554 (2d Cir. 2007) (per curiam) (citing Koloamatangi, 23 I. & N. Dec. at 551). In doing so, we join "the decisions of our sister circuits, which have uniformly adopted the same definition of the phrase 'lawfully admitted for permanent residence' either by finding that the phrase is unambiguous or by granting deference to the BIA's interpretation." Id. (citations omitted).

That is not, however, the end of the matter. Though Gallimore does not attack the reasoning of the non-fraud cases, he challenges their applicability here. His argument is one of timing. Cf. id. at 555 ("[T]o be 'lawfully admitted for permanent residence' an alien must have complied with the substantive legal requirements in place at the time she was admitted for permanent residence." (emphasis added)). Factually, this case is unlike any other we have cited, because here there are two points in time potentially relevant to whether and when Gallimore was "lawfully admitted for permanent residence." These two dates, moreover, straddle the date of the potentially disqualifying conviction. Upon marrying a United States citizen in 1994, Gallimore "obtain[ed] the status of an alien lawfully admitted for permanent residence," yet that status by law was "considered . . . to [be] . . . on a conditional basis" until the conditions were removed in 1996. 8 U.S.C. § 1186a(a)(1). In the interim, in 1995, Gallimore was convicted on

13

the drug charges.

The question, then, is in what year was Gallimore's status adjusted (properly or improperly) to that of "lawfully admitted for permanent residence"?  Was it in 1994, when he first was admitted as a conditional permanent resident?  Or was it in 1996, when the conditions were removed?  If 1994 is the relevant date, then Gallimore would not be ineligible for § 212(c) relief for the reasons stated by the BIA.  This would be so because he had not yet been convicted in 1994 and, as of that date, he otherwise appeared to be in compliance with all relevant legal requirements necessary to obtain permanent resident status.[7]  Conversely, if 1996 is the relevant date, then the BIA's application of the non-fraud cases will carry the day.

## D.

The INA defines the phrase "lawfully admitted for permanent residence" as the "status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20).[8]  In support

---

[7] The obvious caveat to this is that even if 1994 is determined to be the relevant date, that would still leave for resolution the IJ's analysis regarding Gallimore's alleged misrepresentations.  We take no position on the IJ's analysis at this time.

[8] A regulation promulgated pursuant to this provision contains the identical definition, but adds that "[s]uch status terminates upon entry of a final administrative order of exclusion, deportation, or removal."  8 C.F.R. § 1.1(p).  Seizing on the regulation's additional language, Gallimore argues that his status could only have been changed by a final order of removal.  Gallimore Br. at 18.  The BIA rejected this very argument in Koloamatangi, explaining that the extra verbiage was intended to clarify only that "an alien's permanent resident status, which has been lawfully obtained, terminated with the entry of a final administrative order of deportation," but that the lawfulness of the

14

of the BIA's disposition, the Attorney General argues that Gallimore cannot be said to have been accorded the privilege of residing "permanently" in the United States in 1994 because his status was then subject to "conditions."

Before addressing the Attorney General's particular argument in support of the BIA's opinion, we focus on the opinion itself. The BIA applied the non-fraud cases sua sponte, and in doing so did not explain why a conditional permanent resident has not met – at the time conditional status initially is obtained – § 1101(a)(20)'s definition of "lawfully admitted for permanent residence." In fact, what little explanation the BIA did provide strongly suggests that it did not consider the issue at all. Instead, it appears far more likely that the BIA simply overlooked the fact that Gallimore's status initially had been adjusted pursuant to § 1186a in 1994. Consequently, we believe the BIA failed to recognize the relevance of that date, and that that failure tainted its entire legal analysis.

The BIA twice noted – without elaboration and in contrast to the IJ's explicit recognition that Gallimore's "status was adjusted to that of lawful permanent resident on July 6, 1994" – that his status was adjusted in 1996. More importantly, the BIA did not so much as mention § 1186a. We would expect that if the BIA was

_____

status did not turn on when the alien physically departed the country. 23 I. & N. Dec. at 550 (emphasis added). The BIA explained that "[t]here is no indication . . . the final sentence [in the regulation] was intended to undermine the long-standing decisions holding that an alien was not 'lawfully' admitted for permanent resident status if, at the time such status was accorded, he or she was not entitled to it." Id. Accordingly, "the issue of whether an LPR retains her status until the conclusion of removal proceedings is distinct from whether she was 'lawfully admitted' in the first place so that she may seek relief from removal . . . ." Shin, __ F.3d at __, 2010 U.S. App. LEXIS 11933, at *10; accord Savoury, 449 F.3d at 1314. While Gallimore's argument is off the mark, the question of when his status was adjusted to "lawfully admitted for permanent residence" nonetheless remains.

15

interpreting whether an alien admitted under § 1186a is categorically ineligible for a waiver during the two-year conditional period, the agency would have at least cited § 1186a. Instead, the BIA cited only 8 U.S.C. § 1255(a)(2) – requiring that an alien be admissible at the time of obtaining LPR status – and concluded that Gallimore could not satisfy this criterion because his 1995 conviction rendered him inadmissible in 1996. But if Gallimore had already been admitted in 1994, a determination that he would otherwise have been inadmissible in 1996 would have no practical significance. By concluding that Gallimore was inadmissible in 1996 without acknowledging that he had been admitted conditionally in 1994 (when he ostensibly was admissible), the BIA appears to have mistakenly assumed as fact that 1996 was the only year relevant to Gallimore's eligibility for § 212(c) relief.

The Attorney General proclaims baldly that the BIA's "interpretation that [Gallimore] would not have been 'lawfully admitted for permanent residence' until 1996, when his conditions were removed[,]" is entitled to Chevron deference. Att'y Gen. Br. at 22. But if the BIA simply overlooked the fact that Gallimore's status was adjusted pursuant to § 1186a in 1994 – as we strongly suspect is the case – we are not entitled to sustain its decision on grounds the Attorney General articulates ex post. See Ro v. INS, 670 F.2d 114, 116 (9th Cir. 1982) ("A BIA decision can be affirmed only on the basis articulated in the decision."); accord Moret v. Karn, 746 F.2d 989, 992 (3d Cir. 1984) ("[A] court must evaluate the propriety of an agency action solely on the grounds invoked by the agency in its initial determination. If . . . those grounds are inadequate or improper, the agency action must be set aside."). Accordingly, our belief that the BIA's analysis proceeded on a critically inaccurate factual assumption compels us to grant Gallimore's petition and remand the case for further consideration by the BIA.

We cannot conclude with certainty, however, that the BIA did not consider the interplay between §§ 1186a and 212(c). We think it appropriate, therefore, to address the Attorney General's argument – that a conditional LPR is ineligible for § 212(c) relief so long as his status remains "conditional," because he has not yet achieved the privilege of residing "permanently" in the United

States and thus has not been "lawfully admitted for permanent residence."

As an initial matter, if the BIA did indeed interpret §§ 1186a and 212(c) in the manner that the Attorney General now suggests, it did so sub silentio, precluding us from engaging in meaningful review. "While we give deference to the decisions of the BIA . . . we cannot give meaningful review to a decision in which the BIA does not explain how it came to its conclusion." Awolesi v. Ashcroft, 341 F.3d 227, 228-29 (3d Cir. 2003).[9] Here, the BIA's failure to explain its interpretation (if any) handicaps entirely our ability to review it for reasonableness.

To the extent one can intuit from the BIA's opinion an interpretation that conditional permanent residents are ineligible for § 212(c) relief unless and until the conditions have been removed, that conclusion runs headlong into the plain language of § 1186a and its accompanying regulations. This language undermines – if

---

[9] See also Awolesi, 341 F.3d at 232 ("In order for us to be able to give meaningful review to the BIA's decision, we must have some insight into its reasoning."); Dia v. Ashcroft, 353 F.3d 228, 268 (3d Cir. 2003) (en banc) (Stapleton, J., dissenting) ("[J]udicial review necessarily requires something to review and, if the agency provides only its result without an explanation of the underlying fact finding and analysis, a court is unable to provide judicial review."); Abdulai, 239 F.3d at 555 ("[T]he availability of judicial review . . . necessarily contemplates something for us to review . . . . Because the BIA's failure of explanation makes it impossible for us to review its rationale, we grant [the] petition for review, vacate the [BIA]'s order, and remand the matter . . . ." (emphasis in original)); Sotto v. INS, 748 F.2d 832, 837 (3d Cir. 1984); cf. SEC v. Chenery Corp., 332 U.S. 194, 196-97 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive. . . . We must know what a decision means before the duty becomes ours to say whether it is right or wrong." (quotation marks omitted)).

it does not foreclose entirely – the Attorney General's claim that Gallimore had not been "lawfully accorded the privilege of residing permanently in the United States" in 1994, before his 1995 conviction.

Section 1186a, as we have noted, provides that a conditional permanent resident is one who has "obtain[ed] the status of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1186a (emphasis added). It is true that such status is deemed "conditional," perhaps suggesting that a conditional LPR is not literally entitled to reside "permanently" in the United States so long as the marriage-related conditions remain in place. Cf. The American Heritage Dictionary of the English Language, (4th ed. 2004), available at http://dictionary.reference.com/ browse/permanent (last visited July 12, 2010) (defining "permanent" in part as "[n]ot expected to change in status, condition, or place").

But other language in § 1186a undercuts decisively a literal interpretation of the word "permanently" as applied to the residence status of conditional LPRs. Specifically, the provision governing removal of an alien's conditions provides that the conditions are to be removed "effective as of the second anniversary of the alien's obtaining the status of lawful admission for permanent residence." 8 U.S.C. § 1186a(c)(3)(B) (emphasis added). If the conditions are to be removed on the second anniversary of obtaining lawful permanent resident status, then by necessity that "permanent" status is obtained on the date of the initial adjustment. Section 1186a(e), concerning conditional permanent residents' eligibility for citizenship, corroborates this point:

> For purposes of [naturalization], in the case of an alien who is in the United States as a lawful permanent resident on a conditional basis under this section, the alien shall be considered to have been admitted as an alien lawfully admitted for permanent residence and to be in the United States as an alien lawfully admitted to the United States for permanent residence.

18

8 U.S.C. § 1186a(e) (emphasis added).  These statutory provisions unambiguously accord conditional LPRs the privilege of residing "permanently" in the United States, notwithstanding the literal meaning of the word "permanently" and the conditional nature of the status.

Equally plain is 8 C.F.R. § 216.1, which provides in pertinent part:

> A conditional permanent resident is an alien who has been lawfully admitted for permanent residence within the meaning of [8 U.S.C. § 1101(a)(20)], except that a conditional permanent resident is also subject to the conditions and responsibilities set forth in [§ 1186a] . . . .  Unless otherwise specified, the rights, privileges, responsibilities and duties which apply to all other lawful permanent residents apply equally to conditional permanent residents, including but not limited to the right to apply for naturalization (if otherwise eligible), the right to file petitions on behalf of qualifying relatives, the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed; the duty to register with the Selective Service System, when required; and the responsibility for complying with all laws and regulations of the United States.  All references within this chapter to lawful permanent residents apply equally to conditional permanent residents, unless otherwise specified.

8 C.F.R. § 216.1 (emphases added).  The regulation explains, in contrast to the Attorney General's literal argument, that one of the privileges to which a conditional LPR is entitled is the right to reside "permanently" in the United States.  The regulation further demonstrates that conditional permanent residents are, by definition, "lawfully admitted for permanent residence," thereby placing conditional LPRs in the same position as non-conditional

19

LPRs, except as the INA provides otherwise.[10]

The INA thus equates conditional LPRs with "full-fledged" LPRs, except to the extent – but only to the extent – that § 1186a prescribes additional obligations. And so long as a conditional LPR complies with those obligations, they do not affect the alien's "privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." 8 C.F.R. § 216.1. Having considered § 1186a and the regulations promulgated thereunder, we can perceive of no reason why conditional permanent residents should not be deemed "lawfully admitted for permanent residence" as of the date their status is initially adjusted. The statutory and regulatory scheme appears to grant conditional permanent residents the privilege of residing "permanently" in the United States and – upon compliance with § 1186a's marriage-related requirements – the right to retain that privilege.[11]

---

[10] Other regulations dealing with the termination or revocation of conditional status similarly provide that when an alien's conditional LPR status ends, he loses permanent resident status. See 8 C.F.R. § 216.4(b)(3) (providing that if a conditional LPR fails to appear for an unwaived interview on a petition to remove conditions, "the alien's permanent residence status will be automatically terminated as of the second anniversary of the date on which the alien obtained permanent residence" (emphasis added)); 8 C.F.R. § 216.4(d)(2) (providing that if the Attorney General denies a conditional LPR's petition to remove conditions, the "alien's lawful permanent resident status shall be terminated"). But one would expect that before permanent resident status can be terminated, a conditional LPR must have it in the first place.

[11] We are aware of only two other sections in the INA that cross-reference § 1186a: (1) 8 U.S.C. § 1228(b) (subjecting conditional LPRs to expedited removal proceedings); and (2) 8 U.S.C. § 1255(d) (prohibiting the Attorney General from granting to conditional LPRs unconditional status under the general LPR program); see generally Kalal v. Gonzales, 402 F.3d 948, 951 (9th Cir. 2005). We leave it to the BIA to address on remand, if necessary, the effect of these provisions on Gallimore's eligibility for § 212(c) relief.

While at present we are aware of no authority suggesting that a conditional permanent resident is categorically ineligible for § 212(c) relief during the two-year conditional period, we believe that prudence counsels caution. Without explicit BIA input on the issue – and because the probable factual oversight that we have discussed requires us to remand in any event – it is appropriate to allow the BIA to address the Attorney General's argument in the first instance, should it find the need to do so. "A court of appeals is generally not empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam) (citation and internal quotation marks omitted). "Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Id.; accord Negusie v. Holder, __ U.S. __, __, 129 S. Ct. 1159, 1164 (2009) ("When the BIA has not spoken on 'a matter that statutes place primarily in agency hands,' our ordinary rule is to remand to 'give the BIA the opportunity to address the matter in the first instance in light of its own experience.'" (quoting Ventura, 537 U.S. at 16-17)); Gonzales v. Thomas, 547 U.S. 183, 183-87 (2006) (per curiam).

We follow that course here, and do not at this time rule out the interpretation the Attorney General espouses. The BIA is better positioned to undertake a holistic review of all statutory and regulatory provisions potentially bearing on a conditional LPR's eligibility for § 212(c) relief. Of course, the BIA may wish instead simply to correct the factual oversight that we believe led it astray. If such a correction obviates the need to address the Attorney General's argument, the BIA should address the IJ's fraud analysis in the first instance. See Pareja v. Att'y Gen., __ F.3d __, __, No. 08-4598, 2010 U.S. App. LEXIS 15656, at *42-43 (3d Cir. July 29, 2010) (granting a petition for review and remanding to allow the BIA to either clarify its decision or, upon recognition of error, analyze the claim anew using the correct principles, where the "meaning of the BIA's decision" was "uncertain[]"). In either case, however, the BIA must – as always – explain its reasoning sufficiently to enable proper appellate review.

III.

Gallimore also argues that his removal is now barred by the five-year statute of limitations established in 8 U.S.C. § 1256(a). He did not raise this claim to either the IJ or the BIA. It is therefore unexhausted, leaving us without jurisdiction to review it. See Bin Lin v. Att'y Gen., 543 F.3d 114, 119 (3d Cir. 2008).

IV.

For the foregoing reasons, we will grant Gallimore's petition for review and remand the case to the BIA for further proceedings consistent with this opinion.