**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4814
_____

TEMUR KADIROV; KHUSAN KADIROV,

Appellants

v.

SECRETARY UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
DIRECTOR UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES;
TONY BRYSON, District Director USCIS Philadelphia;
EVANGELIA A. KLAPAKIS, Field Office Director USCIS Philadelphia

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-13-cv-07390)
District Judge: Hon. Gerald Austin McHugh

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 16, 2015

Before: FISHER, CHAGARES, and JORDAN, <u>Circuit Judges</u>.

(Filed September 21, 2015)
_____

OPINION[*]
_____

CHAGARES, <u>Circuit Judge</u>.

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Brothers Temur and Khusan Kadirov appeal the District Court's grant of summary judgment in favor of Jeh Johnson, the Secretary of the Department of Homeland Security ("DHS"); Leon Rodriguez, Director of the United States Citizenship and Immigration Services ("USCIS"); and the District Director and Field Office Director of USCIS Philadelphia (collectively, "the Government"). For the reasons that follow, we will affirm.

I.

Because we write exclusively for the parties, we set forth only those facts necessary to our disposition. The Kadirovs' father, Akbar, obtained lawful permanent resident ("LPR") status in 2004. The brothers entered the country in 2000 and obtained their LPR status derivatively through their father in 2005. In 2008, Akbar was charged with fraudulently obtaining his asylum status, a crime to which he subsequently pled guilty. In 2011, an immigration judge sustained removal charges against Akbar, and he was removed that year.

In 2009, Immigration and Customs Enforcement ("ICE") initiated removal proceedings against the Kadirov brothers on the ground that they were inadmissible at the time of their entry because the basis of their asylum status was their father's fraud. In 2012, DHS and the Kadirovs' counsel filed a joint motion to terminate the proceedings without prejudice against the Kadirovs in "the interest of justice." Appendix ("App.") 53. The motion stated that Temur would "be allowed to proceed currently for naturalization, these proceedings having been terminat[ed] without prejudice," id. at 52, and it provided as to Khusan that "the proceedings be withdrawn without prejudice . . . ." Id. The

2

Kadirovs aver that their LPR cards were returned to them at the conclusion of these proceedings, but they do not cite to the record for this point. They also say, without citation, that "[t]he final Motion to Terminate contained date-specific provisions for each of the family members to apply for naturalization, indicating an understanding on the part of the ICE attorney who entered into the agreement to terminate that the Appellants' LPR status was retained." Kadirov Br. 28.

The Kadirovs later applied for naturalization with USCIS, and their applications were denied on the ground that they had "failed to establish that [they] were lawfully admitted as [] permanent resident[s] of the United States as required by [8 U.S.C. § 1427(a)(1)] and [8 U.S.C. § 1429]." App. 177. USCIS reasoned that because the brothers had obtained status through Akbar, and because Akbar had obtained his status fraudulently, the brothers had not proven that they were lawfully admitted LPRs. The Kadirovs administratively appealed, and USCIS affirmed. They then filed a complaint in the United States District Court for the Eastern District of Pennsylvania seeking judicial review of USCIS's denial of their naturalization applications. The parties agreed that their dispute was a question of law and so submitted a Joint Statement of Facts and cross-motions for summary judgment. The District Court granted summary judgment for the Government, and the Kadirovs now appeal.

II.

The District Court had jurisdiction to review the denial of the Kadirovs' naturalization applications de novo pursuant to 8 U.S.C. § 1421(c), and we have jurisdiction to review the District Court's order pursuant to 28 U.S.C. § 1291. We

3

exercise plenary review over the District Court's grant of summary judgment, applying the same standard employed by the District Court. Curley v. Klem, 298 F.3d 271, 276 (3d Cir. 2002). That is, we "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In doing so, "we view all evidence in the light most favorable to the non-moving party." Kurns v. A.W. Chesterton Inc ., 620 F.3d 392, 395 (3d Cir. 2010).

## III.

According to 8 U.S.C. § 1429, "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter." The definition of "lawfully admitted for permanent residence" is "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20).

The petitioner bears the burden of proof in a naturalization proceeding and all doubts about eligibility are resolved in favor of the Government. See 8 U.S.C. § 1439; Berenyi v. Dist. Dir., INS, 385 U.S. 630, 637 (1967).

We have explained that "'the term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity.'" Gallimore v. Att'y Gen., 619 F.3d 216, 223 (3d Cir. 2010) (quoting In re Longstaff, 716 F.2d 1439, 1441 (5th Cir. 1983)

4

(alterations omitted)).[1]  As a result, "an alien whose status has been adjusted to LPR —

but who is subsequently determined to have obtained that status adjustment through fraud

— has not been lawfully admitted for permanent residence because the alien is deemed,

ab initio, never to have obtained [LPR] status." Id. (quotation marks omitted) (alteration

in original).[2]  Courts of appeals have acknowledged that, as an extension of this principle,

an alien innocent of wrongdoing who has obtained LPR status derivatively from someone

who has obtained his status by fraud has not been "lawfully admitted for permanent

residence." Kyong Ho Shin v. Holder, 607 F.3d 1213, 1217 (9th Cir. 2010) (holding that

children who were granted LPR status by virtue of their mother's fraudulently-obtained

status "were not substantively qualified for admission as LPRs at the time they entered

the United States," even though they were not responsible for the fraud); see also Walker

v. Holder, 589 F.3d 12, 19–21 (1st Cir. 2009) (holding that child who obtained LPR

status when his grandparents falsely claimed he was their child on the visa petition had

not been lawfully admitted to the United States, in spite of his lack of intent to defraud

the Government).

---

[1] The Kadirovs argue that "Gallimore concerned interpretation of former § 212(c) of the INA, not naturalization." Kadirov Br. 19.  But Longstaff, the case we quoted in Gallimore, did concern naturalization, and the interpretation of "lawfully" that we adopted in Gallimore thus applies here.

[2] The Kadirovs contend that "[t]he statutory definition of 'lawfully admitted for permanent residence' is plain and requires no interpretation." Kadirov Br. 11.  We elucidated the meaning of the phrase "lawfully admitted for permanent residence" in Gallimore, and we will not revisit that determination here.

The Kadirovs argue that their case is distinct from Walker and Shin, because those cases involved determinations by the Immigration Courts during removal proceedings that stripped the children of their LPR statuses. Here, the Kadirovs argue, they "went through their Immigration Court removal proceedings and emerged with their LPR status not having changed." Kadirov Br. 18 (quotation marks omitted). They focus on the phrase "such status not having changed" in 8 U.S.C. § 1101(a)(20), and they contend that the aborted naturalization proceedings "left [their] LPR status unchanged." Id. at 16. Though the Kadirovs are correct that their removal proceeding ended without a finding that they were not LPRs, that outcome is not dispositive of their naturalization petition. While the removal proceeding did not strip the Kadirovs of LPR status, neither did it cure the underlying deficiency with the basis of that status, their father's fraud; though the Immigration Judge ("IJ") did not find that they were LPRs, the IJ also did not find that they were eligible for LPR status on any basis other than that fraud. Thus, the removal proceeding did not conclude with any disposition as to the Kadirovs' LPR status. The Kadirovs contend that "if the issue had proceeded to litigation the regulations allow each of the family members to demonstrate their own individual eligibility to show they meet the refugee definition," and so they "each would have had the option of proving their own independent eligibility for both the refugee/asylum and keeping their own LPR status." Kadirov Br. 26. But they voluntarily forsook this opportunity when they agreed to the termination of their removal proceedings.

The Kadirovs' estoppel argument likewise fails. They contend that "the statute and the regulations provide for the proper termination, revocation or rescission of status

6

that may have been unlawfully obtained," and that where DHS agreed to terminate the removal proceedings, "the Agency is controlled by its prior decision." Kadirov Br. 23. A party asserting estoppel against the Government bears the burden of proving "(1) a misrepresentation by the government, (2) which [he] reasonably relied upon; (3) to [his] detriment and (4) affirmative misconduct." DiPeppe v. Quarantillo, 337 F.3d 326, 335 (3d Cir. 2003). The Kadirovs claim that they "relied upon the agreement to terminate their removal proceedings and the direct references to their eligibility to apply for naturalization." Kadirov Br. 33. This argument fails. In agreeing to terminate the removal proceedings without prejudice, DHS did not guarantee the Kadirovs' eligibility for naturalization; instead, it simply exercised its discretion to stop pursuing removal. The termination of the proceedings did not estop USCIS from finding that the Kadirovs had failed to meet their burden of showing eligibility.

Finally, the Kadirovs argue that "[t]he Court cannot base its decision on a reason for Agency action that was not asserted by the Agency in its original decision." Kadirov Br. 29. This general principle of judicial review of agency decisions — which applies to "determination[s] or judgment[s] which an administrative agency alone is authorized to make," SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) — is incompatible with the clear command of 8 U.S.C. § 1421, according to which judicial review of a denial of a naturalization application "shall be de novo." This argument thus also fails.

An applicant bears the burden of showing his entitlement to naturalization. See, e.g., 8 U.S.C. § 1439; United States v. Szehinsky, 277 F.3d 331, 334 (3d Cir. 2002). The Kadirovs bore the burden of showing substantive compliance with the requirements for

7

obtaining LPR status.  See Gallimore, 619 F.3d at 223.  Because they could not show that they were lawfully admitted as permanent residents, there was no genuine issue of material fact as to their eligibility for naturalization, and so we will affirm the District Court's grant of summary judgment.

Although this outcome leaves the Kadirovs in the precarious position of being LPRs who are not currently the target of removal proceedings but who cannot pursue naturalization on the basis of their LPR status, this is the position they bargained for in agreeing to terminate the removal proceedings.

IV.

For the reasons stated herein, we will affirm the judgment of the District Court.