**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1368
_____

OLUWAFUNMILAYO OGUNDOJU,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

Initially Docketed as an Appeal from the
United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. Civ. No. 01-cv-00680)
Converted to a Petition for Review
Pursuant to the REAL ID Act of 2005
Agency No. A039-039-008
Immigration Judge: Charles Honeyman
District Judge: Honorable William J. Nealon

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 21, 2010

Before: BARRY, SMITH and HARDIMAN, Circuit Judges

(Opinion filed: July 22, 2010)

_____

OPINION

_____

PER CURIAM

In an amended opinion filed March 5, 2009, we transferred Oluwafunmilayo Ogundoju's petition for review of an Immigration Judge's ("IJ") removal order to the United States District Court for the Middle District of Pennsylvania for a new hearing on Ogundoju's claim that he is a citizen of the United States. The District Court determined that Ogundoju had not established derivative citizenship, and returned the case to this Court. We affirm the District Court's finding that Ogundoju is not a United States citizen. We will dismiss the petition for review for lack of jurisdiction.

I.

The parties are already familiar with the facts and long procedural history of this case. Therefore, we limit our discussion to those facts essential to our decision. As we noted in our previous opinion, Ogundoju entered the United States as a lawful permanent resident in 1989 at the age of 15. He was convicted of two controlled substance violations in the late 1990s and was placed in removal proceedings as a result. Ogundoju attempted to establish through administrative proceedings that he derived citizenship through his father under since-repealed 8 U.S.C. § 1432(a), but he was unsuccessful.[1] On

---

[1] Section 1432(a) provided, in pertinent part:

A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:
. . .

July 13, 2000, an IJ ordered him removed in absentia, as neither he nor his attorney appeared for a hearing. Ogundoju unsuccessfully sought to reopen, contending that he had not had notice of the hearing. The IJ found that Ogundoju had been present at a prior occasion where the hearing date was set, and thus denied the motion to reopen. Ogundoju did not appeal that decision to the Board of Immigration Appeals ("BIA"), but instead filed a habeas petition challenging his detention. He later amended the petition to include his claim of derivative citizenship. The District Court found that it lacked jurisdiction to resolve the main factual issue underlying the citizenship claim, namely, whether Ogundoju's parents had been legally separated. Ogundoju filed a timely appeal, and due to the passage of the REAL ID Act, we converted the appeal into a petition for review.

In our prior opinion, we decided that, despite the fact that Ogundoju had failed to administratively exhaust his claims, we had jurisdiction to consider his citizenship claim. We reasoned that the exhaustion doctrine applies by its terms only to aliens, and that if

_____

(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents . . . ; and if

(4) Such naturalization takes place while such child is under the age of eighteen years; and

(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent . . . naturalized under clause . . . (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a) (1999), repealed by Child Citizenship Act of 2000, § 103, Pub. L. No. 106-395, 114 Stat. 1631.

3

Ogundoju were in fact a United States citizen, the immigration laws would not apply to him. We also recognized that, pursuant to statute (8 U.S.C. § 1252(b)(5)(B)), a genuine issue of material fact involving a claim to citizenship must be resolved in the District Court. As noted, we transferred the case to the District Court for resolution of the factual issues, and we held the petition in abeyance pending such resolution.

## II.

"We may set aside [a] district court's findings of fact only if they are clearly erroneous." Agere Systems, Inc. v. Advanced Environmental Technology Corp., 602 F.3d 204, 216 (3d Cir. 2010). A person claiming United States citizenship bears the burden of establishing his eligibility, and all doubts are resolved in favor of the United States and against the claimant. Bagot v. Ashcroft, 398 F.3d 252, 256-57 (3d Cir. 2005) (citing Berenyi v. District Director, INS, 385 U.S. 630, 637 (1967) and United States v. Macintosh, 283 U.S. 605, 626 (1931)).

The District Court's Memorandum and Order sets forth at length its many attempts to gain Ogundoju's cooperation in attending conferences and an evidentiary hearing. Ogundoju did appear for one conference, on September 24, 2009, with his brother, father, and fiancée. But he refused to meet later with the Government's attorney, despite a court order, and he did not attend the evidentiary hearing. We find that the District Court did not abuse its discretion in proceeding in Ogundoju's absence, particularly since he had informed the Court that he had previously submitted all relevant documentation regarding

4

his parents' marriage and divorce, and since the Court afforded Ogundoju an opportunity to review the evidentiary hearing transcript and add any additional arguments.[2]

The District Court found, based on the evidence, that Ogundoju had not established that his parents were legally separated before his father took custody of him. The District Court noted some evidence considered by the Immigration and Naturalization Service ("INS") when it denied Ogundoju's original application for citizenship. When Ogundoju's father, Festus Ogundoju, applied for naturalization, his statement, signed under oath, stated that he was presently married to Adijat Nkoyo, and he had previously been married two times before, to Gina Ogundoju and to Alyaji Ibrahim (there was no mention of Ogundoju's mother, Dorcas Adepeju Ogundoju). Festus's application claimed that he had seven children, but Ogundoju's name was not listed as one of those children. The Acting District Director's decision denying Ogundoju's motion for reconsideration states that the INS record also included affidavits, including one from Ogundoju's father, stating that Ogundoju's father and mother married in January 1966 in accordance with customary traditions, and "claim[ing] that in June 1976 this customary marriage was dissolved by verbal agreement only, that no judicial

---

[2] To the extent Ogundoju challenges the District Court's order denying his motion to transfer venue, we hold that the District Court did not abuse its discretion, as the Court was familiar with the lengthy, complicated procedural and factual history, and the Assistant United States Attorney had spent considerable time preparing the case over the years. Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995) (district courts have broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer).

divorce took place, and that no written certificate of divorce could be obtained."

Despite his father's earlier affirmation that no written certificate could be obtained, Ogundoju submitted in the District Court a Certificate of Divorce from the Customary Court of Lagos State dated September 18, 1976. The Certificate contains apparent misspellings: it is stamped "REGISTRAY [sic] OF MARRIAGES LAGOS NIGERIA," and has "Registra [sic] of Marriages" typed under the signature line. See Doc. #84, Exhs. A & F.[3] He also submitted, among other documents, affidavits from his grandfather and two uncles, stating that Ogundoju's father and mother were "joined together in verbal (no written document) native and law custom marriage at a family meeting . . . in January 1966," and that "the marriage had since been disolved [sic] in June 1976."[4] See Doc. #84, Exhs. B, C, D, G, H & I. The affidavits were all dated July 7, 1988, and were stamped with a signature of E. Fola Mosanya, Commissioner of Oaths.

The Government submitted a United States Consulate Fraud Prevention Program Report, explaining that the investigator spoke with a number of court officials regarding the affidavits. The officials recalled that Fola Mosanya had retired some twenty years previously, and stated that he could not have signed the documents in 1988. As to the

---

[3] These documents appear earlier in the District Court record (see Doc. #22 and Doc. #49). For ease of reference, references here are to the Exhibits to the Supplement to the Government's Response (Doc. #84), which contains the documents mentioned, copies of the documents with written notations on them, a Fraud Prevention Program Report of Investigation, and a Declaration of the Fraud Prevention Investigator who carried out the investigation in Nigeria.

[4] These affidavits do not explain the process by which the marriage was dissolved.

Certificate of Divorce, the investigator went to the Lagos State Customary Court, and was informed by the Registrar of the Court that the divorce decree had not been issued by his court, as claimed, and that it was not signed by any authorized officer. See Doc. #84, Exhs. E & J.

Ogundoju then submitted these documents to the U.S. Consulate in Lagos, Nigeria, which informed him that they do not verify documents. Ogundoju next submitted them to the Nigerian Embassy in Washington, D.C., which forwarded them to the Consulate General of Nigeria in New York, New York. The Consulate later forwarded to Ogundoju the affidavit of an attorney retained by Ogundoju's mother, stating that he obtained "Certified True Copies" of the previously submitted affidavits of Ogundoju's uncles. The Consulate also forwarded a letter regarding Ogundoju's request for authentication of the divorce declaration, informing him "that action is going on accordingly." Doc. #103, exhibits.

The District Court examined the law and determined that a customary divorce in Nigeria during the time in question required a certificate of divorce rendered by a customary court.[5] The Certificate tendered by Ogundoju was never authenticated, was

---

[5] Ogundoju and the Government both submitted information concerning the applicable law regarding divorce in Nigeria, including some information from a Foreign Law Specialist at the Library of Congress, who stated in a letter that a divorce could be effected through a "dissolution ceremony" in lieu of going through a customary court. However, as the District Court noted, Ogundoju did not claim that an actual "dissolution ceremony" took place, nor did he make any attempt to document such a ceremony. Instead, he submitted a Certificate of Divorce to show that his father did go through a

7

inherently suspicious (due to the misspellings), and contradicted the affidavits of his family members, including his father, who said no written documentation of the divorce existed (and that the divorce took place in June 1976, while the Certificate is dated in September 1976).[6]

The District Court's finding that Ogundoju has "not established the Certificate of Divorce is a valid legal document from the Customary Court of Lagos, Nigeria," is not clearly erroneous. He therefore did not meet his burden of showing that his parents were legally separated, and has thus not met his burden of showing that he derives U.S. citizenship from his father.

### III.

As we agree with the District Court's finding that Ogundoju is not a U.S. citizen, the immigration laws apply to him. Ogundoju is subject to the IJ's final order of removal. Ogundoju did not appeal the IJ's order to the BIA. Because he did not exhaust his administrative remedies, we lack jurisdiction to review the IJ's decision. 8 U.S.C. § 1252(d).

For the foregoing reasons, we affirm the District Court's finding that Ogundoju did not meet his burden of showing that he derives citizenship from his father, and we will

customary court in dissolving his marriage.

[6] The District Court did not make an explicit finding as to the authenticity of the affidavits; however, even assuming that Ogundoju's uncles' affidavits were authentic, because they made no mention of a certificate of divorce, they undermined Ogundoju's position, rather than supporting it.

dismiss the petition for review.